**IN RE BILLMAN.** ▇

[Cite as *In re Billman* (1993), 92 Ohio App.3d 279.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 63927, 63928.

Decided Nov. 22, 1993.

*Celestine Suttles*, Cuyahoga County Department of Children and Family Services; *Martin Keenan*, Guardian *ad litem*; and *Robert D. Sichta*, for appellee Franklin Billman.

*Hyman Friedman*, Cuyahoga County Public Defender, *Donald Green* and *Salvatore Amata*, Assistant Public Defenders, for appellant Karen Hayes.

*Per Curiam.*

The appellant, Karen Hayes, was before the Cuyahoga County Court of Common Pleas, Juvenile Division, pursuant to a dependency complaint filed by the Cuyahoga County Department of Human Services ("CCDHS") regarding Franklin Billman, Jr., the son of Hayes. When CCDHS called Hayes as a witness, she asserted her Fifth Amendment privilege against self-incrimination.[1] The trial judge overruled the objection, apparently believing that once Hayes was represented by counsel, she waived her other constitutional rights.

The United States Supreme Court has held that the right to refrain from self-incrimination applies to juvenile court proceedings. In *In re Gault* (1967), 387 U.S. 1, 47–48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527, 557, the court held:

"The language of the Fifth Amendment, applicable to the States by operation of the Fourteenth Amendment, is unequivocal and without exception. And the scope of the privilege is comprehensive. As Mr. Justice White, concurring, stated in *Murphy v. Waterfront Commission*, 378 U.S. 52, 94 [84 S.Ct. 1594, 1611, 12 L.Ed.2d 678, 704] (1964):

" 'The privilege can be claimed in *any proceeding,* be it criminal or civil, administrative or judicial, investigatory or adjudicatory * * * [and] it protects *any disclosures* which the witness may reasonably apprehend *could be used in a criminal prosecution or which could lead to other evidence that might be so used.*' " (Emphasis *sic* and footnote omitted.)

Clearly, the right to refrain from testifying against oneself attaches to a dependency action in juvenile court. The *Gault* court also emphatically stated that the application of the constitutional privilege does not turn on the type of proceeding:

"It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person 'shall be compelled in any *criminal case* to be a witness against himself.' However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. The privilege may,

---

1. Appellant sets forth one assignment of error:

   "The trial court denied Karen Hayes her privilege against self-incrimination and thereby denied her due process of law when it ordered her to testify during CCDHS's case-in-chief at the dependency adjudication hearing.

   "A. A Mother Has A Right To Remain Silent at a Dependency Adjudication Hearing.

   "B. Right to Remain Silent Does Not Dissipate If a Party Is Represented by Counsel.

   "C. The Trial Court's Ordering Karen Hayes to Testify in CCDHS's Case-in-Chief Constituted Prejudicial Reversible Error."

for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." (Emphasis *sic* and footnote omitted.) *Id.* at 49, 87 S.Ct. at 1455, 18 L.Ed.2d at 558.

In the case *sub judice,* Hayes was required to testify in a dependency proceeding. A "dependent child" is defined in R.C. 2151.04 as follows:

"As used in this chapter, 'dependent child' includes any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship;

"(D) To whom both of the following apply:

"(1) He is residing in a household in which a parent, guardian, custodian, or other member of the household has abused or neglected a sibling of the child;

"(2) Because of the circumstances surrounding the abuse or neglect of the sibling and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."

Testimony elicited from a parent on any of these issues would open the door for potential prosecution, at a minimum, for child endangering pursuant to R.C. 2919.22.

In the case *sub judice,* Hayes chose to assert her constitutional right to silence, and the court committed reversible error in forcing her to testify.

Appellant's assignment of error is well taken.

*Judgment reversed and
cause remanded for rehearing.*

JOHN F. CORRIGAN, P.J., and JAMES D. SWEENEY, J., concur.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I dissent from the majority opinion. I am an ardent believer in constitutional protection for all citizens, but I am not willing to create a blanket protection with far more damaging implications than necessary.

The power of government to compel individuals to testify in court, before grand juries and other governmental agencies, is firmly entrenched in Anglo–American

jurisprudence. See *Ullman v. United States* (1956), 350 U.S. 422, 439, 76 S.Ct. 497, 507, 100 L.Ed. 511, 525, fn. 15. The power with respect to courts was established by statute in England as early as 1562, see Statute of Elizabeth (1562), 5 Eliz. 1, ch. 9, Section 12, and Lord Bacon observed as early as 1612 that all subjects owed the King their "knowledge and discovery," *Countess of Shrewsbury's Case* (1612), 2 How.St.Tr. 769, 778. The power to compel a witness's testimony and the corresponding duty to testify are recognized in the Sixth Amendment to the United States Constitution. But the power to compel testimony is not absolute. The most important check to this power of compulsion to testify is the Fifth Amendment to the United States Constitution, a.k.a., privilege against compulsory self-incrimination, which reads in pertinent part as follows:

"No person shall * * * be compelled in any criminal case to be a witness against himself * * *."

The privilege is a testament to our fundamental values and aspirations; it also shows a very crucial factor in the development of our individual liberty. *Ullman, supra,* 350 U.S. at 426, 76 S.Ct. at 500, 100 L.Ed. at 518.

I agree with the majority that it can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory. *McCarthy v. Arndstein* (1924), 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158, 160–161; *United States v. Saline Bank* (1828), 1 Pet. 100, 7 L.Ed. 69; cf. *Gardner v. Broderick* (1968), 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082. But it is not accorded the same weight in civil as it is in criminal proceedings. It is not available in a civil action unless the testimony might later subject the witness to a criminal prosecution. Where I part with the majority, therefore, is on the application of the privilege. The privilege protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. *Hoffman v. United States* (1951), 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124; see, also, *Blau v. United States* (1950), 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170; *Mason v. United States* (1917), 244 U.S. 362, 365, 37 S.Ct. 621, 622, 61 L.Ed. 1198, 1199–1200. It is my opinion that a witness can be compelled to testify so long as the government does not later use his words against him in a criminal prosecution or in any way that undermines his protected rights as a result of his testimony. It is these values which underlie the privilege that courts should zealously safeguard. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; and *Boyd v. United States* (1886), 116 U.S. 616, 635, 6 S.Ct. 524, 534, 29 L.Ed. 746, 752–753.

The majority's sole reason for reversing the trial court is that "[t]estimony elicited from a parent on any of these issues would open the door for potential prosecution, at a minimum, for child endangering pursuant to R.C. 2919.22." In

other words, the testimony *may* be used against a testifying parent. This is not an argument for a court to make. It should be a statement made by a witness while refusing to answer a particular question either on advice of counsel or on her own. The Fifth Amendment privilege against compulsory self-incrimination is not a privilege to remain silent, but a privilege against subsequent prosecution of the witness based on his own words. The essential ingredient lacking in this case is the failure of appellant to demonstrate that her testimony was in any way incriminating or used against her. A constitutional protection does not and should not operate in a vacuum, or be subjected to conjecture and suppositions. Section 6002, Title 18, U.S.Code provides that when a witness is compelled to testify over a claim of the privilege:

" * * * [T]he witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

In the instant case, the record reveals that appellant originated the circumstances that led to this proceeding when she requested outside care from the state for her children. At the hearing, the trial court understood the steps necessary to protect her when it made the following observations:

"THE COURT: Ordinarily, Mr. Amata, in this courtroom, witnesses who are called * * * must testify, and * * * unless they're going to incriminate themselves—in which case, you could advise her not to answer the question, because it might be incriminating." See *In re Troescher* (Aug. 5, 1991), Stark App. No. 8442, unreported, 1991 WL 160861. Even appellant's counsel could not find any incriminating statement made by her nor did he advise her not to answer any of the questions proffered to her:

"They have to rely on my client to get up there and incriminate herself—which I don't think she did, but that's the gist of their case."

In case after case, courts have ruled that the protection is against the use of compelled testimony and not the making of the testimony. A witness does not suffer from the making of a statement until that statement is used against him at which time the Fifth Amendment protection against self-incrimination kicks in. As the United States Supreme Court held in *Murphy v. Waterfront Comm. of New York Harbor* (1964), 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678, 695:

" '[A] state witness may not be compelled to give testimony which may be incriminating under federal law *unless the compelled testimony and its fruits*

*cannot be used in any manner by federal officials in connection with a criminal prosecution against him.* We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, *the Federal Government must be prohibited from making any such use of compelled testimony and its fruits.'"* (Emphasis added.) See, also, *Albertson v. Subversive Activities Control Bd.* (1965), 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165.

While it is preferable not to compel a witness to testify, however, when it is done in the interest of justice, an appellate court's review should be concerned with the use of such testimony. To the extent that appellant's testimony is not used against her, there is no violation of the Fifth Amendment in the instant case, and I would not disturb the trial court's judgment. Accordingly, I dissent.