JOURNAL ENTRY AND OPINION
Appellant Michelle DeCapua appeals from the decision of the Juvenile Court terminating her parental rights and granting permanent custody of appellant's three children to appellee Cuyahoga County Department of Children and Family Services (Family Services). Appellant claims the trial court erred in compelling incriminating testimony from her husband over objection and in terminating appellant's rights without making the findings required by R.C. 2151.414. We find no error and affirm.
On February 24, 1997, Timothy, Victor and Christopher Seagro, ages seven, four and three, respectively, were removed from the home of their mother and father, appellant Michelle DiCapua and Lee Seagro, and placed in the emergency custody of Family Services. The children's removal from their home resulted from Timothy calling 911 for emergency assistance after finding his mother unconscious in the home from an overdose of cocaine and alcohol.
On April 4, 1997, the children were adjudicated neglected and continued under the custody of Family Services, with the relatives, and later foster placement. On April 6, 1998, Family Services filed its motion to modify temporary custody to permanent custody after appellant DiCapua and Lee Seagro failed to comply with the recommended case plan. A hearing on the motion was held on June 3, 1999, and continued to June 18, 1999. On June 18, 1999, the hearing was again continued, at the father and mother's request, to June 29, 1999, at which time the matter was heard to its completion. Appellant DiCapua did not appear for the June 29, 1999 hearing.
The children were originally placed with relatives. From March 1997 to August 1998, the children were specifically placed with paternal uncle Gaetano Seagro and his wife Melissa Seagro. Appellant Michelle DiCapua and Lee Seagro were not married at the time of the removal or the birth of the three children. Subsequently, due to an illness, Melissa Seagro could no longer help care for the boys. They therefore were moved to their maternal grandmother's house and later to a foster care family.
Following the children's removal from the home, a case plan was prepared by social worker Nicole Philips to offer services to the family for the purpose of reunifying the children with their parents. The case plan included, but was not limited to, recommending that the mother submit to a psychiatric evaluation and get regulated on medication for her diagnosed bipolar disorder. The father was to establish paternity, mother and father were to undergo alcohol/drug abuse treatment and to maintain stable housing. In spite of efforts made by Family Service to reunify the family during the one-year period of temporary custody, appellant and Lee Seagro failed to maintain stable housing and to address the substance abuse and mental health issues, which caused the children to be removed from the home and placed in the custody of Family Services.
Specifically, with respect to appellant's case plan, she failed to complete a drug treatment program, a psychological evaluation and to maintain stable housing. She received psychiatric treatment at Metro Health Center. She failed, however, to complete the recommended program and did not consistently take the medication prescribed for her mental condition. According to the social worker's testimony, appellant continues to suffer from mental illness which threatens the health and welfare of the children.
Both Lee Seagro and appellant consistently failed to submit to urine screens as recently as April 1999. Appellant had a drug relapse on February 27, 1999. At the time of the hearing in June 1999, the mother lacked stable housing and her place of residency was unknown.
With respect to Lee Seagro's case plan, he entered a drug treatment program for the first time on September 21, 1998, over a year and a half after the children's removal. He finally established paternity on March 3, 1999, more than two years after removal. However, he failed to maintain six months of stable housing as required in the case plan, and had a history of being evicted.
The father moved in December 1998 and then again in May 1999 into a rental property that had, as of one month prior to the permanent custody hearings, broken, boarded and plastic-covered windows. Lee Seagro's residence was generally in a state of disrepair, such that on the day of the final hearing in this matter, the house was not in a livable condition to which the children could return.
The father also failed to maintain housing separate from appellant. In April 1999, Lee Seagro signed a lease for two adult occupants, himself and appellant. Lee Seagro was aware that appellant's noncompliance with her case plan regarding her lack of sobriety, mental stability and stable housing, posed a serious risk to the children. He also was aware that as a requirement of reunification, any personal relationship with appellant would have to cease due to the risk appellant posed to the children due to her mental instability. Nevertheless, appellant was living with Lee Seagro up until June 3, 1999, and slept at his house on June 28, 1999, the day before the final permanent custody hearing in this matter.
Child care and supervision arrangements for the children were not available when the parents were absent. As of the final court hearing, no provisions for child care had been made by Lee Seagro to accommodate his work schedule as a roofer. Also, at the time of the final hearing, Lee Seagro had an open arrest warrant involving a 1996 DUI and driving under suspension conviction which required at minimum a thirty-day jail sentence or a fifteen-day house arrest.
The social worker testified that both appellant and Lee Seagro have demonstrated a lack of commitment toward the children by failing to regularly visit with them. During placement with the relatives, appellant and the father were given unlimited access to the children, yet visitations were sporadic and inconsistent. The parents would often fail to show without explanation. When visits did take place, they were disruptive in that the children would regress to problem behavior, such as using vulgar language, temper tantrums, bed wetting, and destroying furniture.
The problems surrounding placement with the relative care givers were exacerbated by appellant exhibiting threatening and hostile behavior toward Melissa Seagro, the paternal aunt, and also towards the maternal grandmother. Melissa Seagro was afraid of appellant due to her behavior and expressed concern about appellant's mental health.
As a result of the children being out of control during and after visits with their parents, the relative care givers requested that the children be removed from their home. No relatives came forward to request legal custody of the children.
The children were placed in foster care in August 1998. Prior to the foster placement, Timothy, the seven year old, was diagnosed with ADHD [Attention Deficit-Hyperactivity Disorder] with physical and verbal aggressiveness and was prescribed Ritalin. Victor, age four, had problems with physical violence between him and Timothy. Christopher, age three, suffered from temper tantrums and portrayed vulgar language.
While placed in foster care, the children's visits with appellant DiCapua and their father caused the children to display disruptive behaviors in school and at the foster home, before, during and after the visits. Due to setting fire to the carpet, Victor and Christopher were removed from their initial foster home and placed in a second foster home.
The children have been out of their parental home for over two years due to appellant and Lee Seagro's inability to remedy the circumstances leading to the removal. Timothy, Victor and Christopher are special needs children who require a lot of care and attention. At the time of the hearing, they were receiving psychological counseling that the social worker recommended be continued.
In spite of efforts made by Family Services for over two years to assist the family with reunification, the parents remained unable to provide adequate care for the children. As a result, the Marycrest caseworker, Cynthia Hooper, testified that permanent custody is in the best interest of the children. Timothy's foster parents are very involved with Victor and Christopher at their new foster home and have expressed an interest in adopting all three boys.
On April 6, 1998, Family Services filed its motion to modify temporary custody to permanent custody. Appellant failed to appear at the final proceeding on June 29, 1999. Lee Seagro was present and was called as a rebuttal witness by Family Services. Counsel for Lee Seagro objected at the outset of the hearing, invoking the right to remain silent. The court required Lee Seagro to testify and to raise the defense to more specific questioning.
The trial court found by clear and convincing evidence that Family Services made reasonable efforts to prevent removal of the children from their home and that continued residence in their home would not be in the best interest of the children. Accordingly, the court granted the motion and ordered the children committed to the permanent custody of Family Services. (Journal Entry July 13, 1999). Appellant DiCapua now appeals and asserts the following assignments of error.
 I. BY COMPELLING A PARENT TO TESTIFY IN NEGLECT PROCEEDINGS THE TRIAL COURT COMMITTED REVERSIBLE ERROR.
Appellant argues that the trial court committed reversible error by requiring Lee Seagro, father of the children, to testify in a neglect and dependency proceeding, even though he invoked his Fifth Amendment right to remain silent.
We agree with the appellant that the Fifth Amendment privilege against self incrimination applies in civil as well as criminal proceedings. City of Cincinnati v. Bawtenheimer (1992), 63 Ohio St.3d 260, 264. However, this privilege is a personal one:
 The Fifth Amendment protects the person against incrimination through compelled testimony or other compelled acts having some testimonial character. The Fifth Amendment privilege is a personal one, adhering to the person, and not to the information that may tend to incriminate him or her. Couch v. United States (1973), 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548, 554; Fisher v. United States (1976), 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39.
Id. Since the Fifth Amendment right against compulsory incrimination is a personal one, it can only be invoked by the individual whose testimony is being compelled. State v. Benner (1988), 40 Ohio St.3d 301, 310, citing to Moran v. Burbine (1986), 475 U.S. 412, 433.
In the case herein, the appellant, who did not testify at the hearing, is asserting the Fifth Amendment privilege of the father of her children who did testify. Based on the above authorities, appellant cannot raise this privilege which is personal to her husband. Therefore, since the necessary element of personal compulsion against appellant is lacking, the appellant suffered no violation of her Fifth Amendment right against self incrimination.
Appellant cites In re Billman (1993), 92 Ohio App.3d 279 and In re Destiny Knight (Sept. 30, 1999), Cuyahoga App. No. 74268, unreported, as standing for the proposition that a parent in a neglect or dependency proceeding may invoke the Fifth Amendment and refuse to take the stand. Billman and Destiny Knight are distinguishable from the case at bar on the grounds that in both of those cases, the appealing party was the parent who was compelled to testify at the trial level as a witness, in spite of invoking the Fifth Amendment. Knight at 3; Billman at 280.
Assignment of Error I is overruled.
 II. IN TERMINATING MS. DICAPUA'S PARENTAL RIGHTS WITHOUT MAKING THE FINDINGS REQUIRED BY R.C. 2151.353, THE TRIAL COURT COMMITTED REVERSIBLE ERROR.
In her second assignment of error, appellant argues that the trial court erred when it granted permanent custody to Family Services without including in its journal entry a finding that the children could not be placed with either of the parents within a reasonable time pursuant to R.C. 2151.414(E). This argument is without merit.
R.C. 2151.414(E) provides in pertinent part:
 * * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. * * *
The statute then goes on to list the factors to be considered by the court in making this decision. Included within the list of enumerated factors are the following:
 1. Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 2. Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * * for purposes of division (A)(4) of section 2151.353 of the Revised Code; * * * 12. Any other factor the court considers relevant.
In the case herein, the trial court found in pertinent part:
 The Court heard evidence and testimony. Upon due consideration thereof, the Court finds that the allegations of the complaint have been proven by clear and convincing evidence.
 Reasonable efforts were made by the Cuyahoga County Department of Children and Family Services to prevent removal of said children from their home. The Court finds that the continued residence of the children in their home will be contrary to their best interest and welfare for the following reasons: mother has a chronic mental illness that is so severe it prevents her from being able to provide the children with an adequate permanent home.
 Mother and father have failed to substantially and continuously remedy the conditions causing the children to be placed outside the home. * * * It is therefore ordered that said children are hereby committed to the permanent custody of Cuyahoga County Department of Children and Family Services for purpose of adoption.
Although the trial court did not specifically find that the children could not be placed with either parent within a reasonable time, the trial court did set forth two of the conditions listed in R.C.2151.414(E) which support its finding that Family Services should receive permanent custody. The trial court found that the mother has a chronic mental problem which prohibits her from being able to care for the children, R.C. 2929.414 (E)(2), and that the mother and father have both failed to substantially remedy the conditions causing the children to be placed outside the home in the first place, R.C. 2929.414(E)(1). Therefore, although the trial court did not enter the required finding, this was harmless error, as the basis for the trial court's decision was set forth.
As the court in In the Matter of: Wesley Kelley (Aug. 15, 2000), Marion App. No. 9-2000-23, unreported at 8 held:
 The judgment entry issued by the trial court specifically states that the court found that there was clear and convincing evidence that the child should be placed in the permanent care of the Marion County Children Services Board. The court then cites to various factors under R.C. 2151.414(E) to support this conclusion. Specifically, the court found that the appellant had failed to remedy the conditions that caused the child to be placed outside the home, R.C. 2151.414(E)(1); had demonstrated a lack of commitment to the child, R.C. 2151.414(E)(4); had refused to participate in drug and alcohol treatment, R.C. 2151.414(E)(9); as well as other factors the court considered relevant, R.C. 2151.414(E)(16).
 The detailed judgment entry clearly supports the court's decision that it would be in the best interest of the child for permanent custody to be granted to Children Services.
 While the court did not specifically state that the child cannot be placed with either parents within a reasonable period of time or should not be placed with the parents, it is clear from the court's detailed judgment entry that was the court's findings. A thorough review of the record and the findings and conclusions of the trial court clearly reveals that the court considered all relevant statutory factors in rendering its judgment.
 The express purpose of a R.C. 2151.414 hearing is to determine whether a child can or should be placed with either of his parents within a reasonable time after consideration of specific statutory factors. In the Matter of Hart(March 9, 1993), Marion App. No. 9-92-47, unreported. The court's explicit findings under R.C. 2151.414(E) are an implicit conclusion by the court that one of the situations under section 2151.414(B) was applicable. Therefore, the court's failure to reproduce the exact statutory language cannot be considered prejudicial to the appellant.
See, also, In the Matter of Davon B., Dre-Vontae B., Da-Twan B., Dedra B. (May 9, 1997), Lucas App. No. L-96-187, unreported; In the Matter of Winki (AKA Winkie) Shahan, Adjudged Abused Child (June 26, 1997), Hocking App. No. 97CA02, unreported; In the Matter of: Christopher B. 
Marcus S. Vanessa S. (July 3, 1997), Lucas App. No. L-96-046, unreported; In the Matter of: Brittani Kasler (Dec. 23, 1997), Franklin App. No. 97APF05-726, unreported, all of which hold that the trial court's failure to specifically state that the children cannot be placed with either parent within a reasonable time is harmless error when the trial court sets forth factors under R.C. 2151.414(E) supporting its decision to grant custody to Family Services.
Assignment of Error II is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Juvenile Court Division to carry this judgment into execution.
ROCCO, P.J., CONCURS WITH SEPARATE CONCURRING OPINION.
MICHAEL J. CORRIGAN, J., CONCURS AND CONCURS WITH JUDGE ROCCO'S SEPARATE CONCURRING OPINION.
 _________________________ JAMES M. PORTER, JUDGE