OPINION
{¶ 1} Appellant, Clyde William Henry, Jr., appeals the May 22, 2001 judgment entry of the Lake County Court of Common Pleas, Juvenile Division.
{¶ 2} On November 17, 2000, appellant filed a complaint alleging that the minor child, Kenneth J. Henry ("Kenneth"), who was born on July 11, 1989, was a neglected child pursuant to R.C. 2151.03. On that same date, appellant filed an emergency motion to designate himself as temporary residential parent and legal custodian of Kenneth, which the magistrate granted. The motion was granted on that same date. Thereafter, a hearing on the emergency motion took place on November 21, 2000, and the magistrate determined that there was probable cause for the temporary order designating appellant as residential parent and legal custodian to remain in effect. The matter was set for a pretrial scheduled on January 10, 2001.
{¶ 3} On December 7, 2000, appellee, Denise Henry, the natural mother, filed a motion to vacate the temporary custody order, a motion to advance the pretrial date that was set for January 10, 2001, and a motion for an interim visitation schedule.[1] At the January 10, 2001 hearing, an interim visitation schedule was established by agreement of the parties.
{¶ 4} A trial before the magistrate took place on February 6, 2001, and continued on February 8, 2001. Prior to the trial, appellee moved to dismiss the complaint, which was denied. During the trial, appellant's attorney sought to call appellee as a witness. However, appellee's attorney objected to appellee being called as a witness as it violated her Fifth Amendment right not to incriminate herself. Appellant's attorney objected.
{¶ 5} Appellant and his mother testified at the trial. The testimony revealed that appellee had been involved in an automobile accident on September 14, 2000. As a result, she suffered several broken ribs, a head injury, a collapsed lung, and a broken vertebra. During her stay in the hospital, appellant had Kenneth for four days. Kenneth was returned to appellee upon her release from the hospital.
{¶ 6} Appellant stated that on October 26, 2000, he received a telephone call from Kenneth asking him to go to the Lake County Sheriff's Department. Upon arriving at the Lake County Sheriff's Department, appellant heard appellee inform Kenneth that she had "a bone floating around in her brain and she had to go to California to get an operation." Appellee sent Kenneth to appellant's house and notified appellant that she would be staying with her mother. Appellant indicated that appellee left the telephone number where she could be reached.
{¶ 7} Appellant testified that he was concerned about Kenneth's schooling since he lived forty-five minutes away. He was also worried about any possible medical treatment. He testified that he expressed his concerns to appellee, and she told him he would have to deal with it. Appellant filed a motion with the trial court, and Kenneth was enrolled in a school system near appellant's home for a period of sixty days. Further, appellant admitted that Kenneth had not required any medical care while he was in his care.
{¶ 8} Appellant also related that when Kenneth was placed into his care in October 2000, he did not have his school clothes or winter clothes. As a result, Kenneth's paternal grandmother bought him a new winter coat, snow leggings, and boots. However, appellant stated that he did not attempt to contact appellee to gain access into her home to retrieve Kenneth's winter apparel.
{¶ 9} Appellant testified that Kenneth received "some e-mails" from appellee around the first week of November of 2000. In one e-mail message dated November 9, 2000, appellee informed Kenneth that she would be back in Ohio in two weeks. Subsequently, she called Kenneth on November 16, 2000, and informed him that she would be home in two weeks. Appellee returned to Ohio in the first part of December. After appellant presented his case, appellee moved to dismiss. In a decision dated February 14, 2001, the magistrate explained that there was no evidence presented to support a finding that Kenneth was neglected, and thus, granted appellee's motion to dismiss.
{¶ 10} On February 20, 2001, appellant filed a motion for extension of time requesting additional time to file objections for the purpose of obtaining a transcript of the proceedings. The trial court granted an extension of thirty days on February 22, 2001. On March 7, 2001, appellee filed a motion to review the order designating appellant temporary residential parent and legal custodian. A hearing was held on March 15, 2001. On that same date, the magistrate issued a nunc pro tunc entry vacating all prior orders. The trial court adopted this order on March 15, 2001.[2] The magistrate's decision also stated that appellant had six days to file a motion to stay since he had already informed the trial court that he intended to file objections to the prior magistrate's decision.
{¶ 11} On March 21, 2001, appellant filed a second motion for extension of time until April 13, 2001, to file his objections to the magistrate's decision, which was granted. On that same date, appellant filed a motion to stay the nunc pro tunc entry, which was denied on March 27, 2001. Thereafter, appellant filed an emergency motion for reconsideration of the stay on March 28, 2001. The trial court also denied that motion on March 28, 2001. Appellant then filed a third request for an extension of time to file objections to the magistrate's decision, which was granted.
{¶ 12} On April 20, 2001, appellant filed objections to the magistrate's February 14, 2001 decision. Appellee filed a response to the objections on May 1, 2001. A hearing on the objections was set for May 10, 2001. On May 22, 2001, the trial court overruled appellant's objections to the magistrate's decision and concluded that the matter be dismissed. Appellant timely filed the instant appeal and posits the following as error:
 {¶ 13} "[1.] The trial court erred to the prejudice of [appellant] by granting the motion to dismiss made by counsel for [appellee].
 {¶ 14} "[2.] The trial court erred to the prejudice of [appellant] by allowing [appellee] to refuse to testify.
 {¶ 15} "[3.] The trial court erred to the prejudice of [appellant] by denying [appellant's] motion to stay and [appellant's] motion for reconsideration."
{¶ 16} Under his first assignment of error, appellant asserts that the trial court erred by granting appellee's motion to dismiss.
{¶ 17} A determination of neglect pursuant to R.C. 2151.03 must be supported by clear and convincing evidence. R.C. 2151.35(A) and Juv.R. 29(E)(4). The standard of clear and convincing evidence requires that the proof produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. As the Supreme Court of Ohio stated in State v. Schiebel (1990), 55 Ohio St.3d 71, 74:
 {¶ 18} "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. * * * However, it is also firmly established that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge. * * *." (Citations omitted.)
{¶ 19} R.C. 2151.03(A) defines a "neglected child" as any child:
 {¶ 20} "(1) Who is abandoned by the child's parents, guardian, or custodian;
 {¶ 21} "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 {¶ 22} "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being[.]"
{¶ 23} A determination that a child is neglected "requires some showing that parents * * * [are] at fault before a finding of a lack of proper (or adequate) care can be made." In re Riddle (1997),79 Ohio St.3d 259, 262.
{¶ 24} Before performing our review, we should note that the trial court is in the best position to weigh the testimony and observe the witnesses' demeanor in order to gauge their credibility. In re Jane Doe1 (1991), 57 Ohio St.3d 135, 138.
{¶ 25} Here, after reviewing the transcript from the hearing, it is our view that there was no clear and convincing evidence that appellee neglected Kenneth. The juvenile court did not have sufficient evidence before it to produce in its mind a firm belief that Kenneth lacked adequate parental care due to the fault of appellee. In fact, the evidence at the hearing revealed that appellee had been involved in a serious accident in September 2000, and she went to her mother's residence in California to recuperate. Appellee placed Kenneth in the care of his father, appellant. We cannot conclude that Kenneth was abandoned or that he lacked adequate care pursuant to 2151.03(A). Thus, the juvenile court did not err by dismissing the complaint as Kenneth was not a neglected child as defined in R.C. 2151.03. Appellant's first assignment of error is overruled.
{¶ 26} In his second assignment of error, appellant argues that the trial court erred by allowing appellee to refuse to testify.
{¶ 27} The Fifth Amendment of the United States Constitution states that "no person * * * shall be compelled in any criminal case to be a witness against himself * * *." The Fifth Amendment privilege against self-incrimination applies in all criminal, civil, and administrative proceedings where a witness may be called to testify, including juvenile court proceedings. In re Gault (1967), 387 U.S. 1,47-48; In re Billman (1993), 92 Ohio App.3d 279, 280.
{¶ 28} The privilege not only applies to evidence that may directly support a criminal conviction, but to information that would furnish a link in the chain of evidence that could lead to prosecution and to evidence that a person reasonably believes could be used against him or her in a criminal prosecution. Cincinnati v. Bawtenheimer (1992),63 Ohio St.3d 260, 264.
{¶ 29} In the present matter, when appellant's attorney attempted to call appellee to the stand, appellee's attorney objected on the grounds that the neglect complaint could lead to a criminal matter of child endangering. Appellant objected, but the trial court allowed appellee to refuse to testify. We note that "even where the trial court is aware that a witness intends to invoke the Fifth amendment privilege against self-incrimination, the defendant has a constitutional right to call the subpoenaed witness to the stand, swear in the witness, and attempt to elicit testimony. * * * A witness's privilege against self-incrimination is clearly not co-extensive with a defendant's right not to take the stand." (Citations omitted.) In re Zahler (Jun. 23, 1995), 11th Dist. No. 94-L-091, 1995 WL 411790, at 3.
{¶ 30} In the case at bar, the more appropriate way to invoke theFifth Amendment privilege would have been for appellee to take the stand and invoke her right. However, any error that may have occurred was harmless. Since there was a possibility that the complaint in neglect could lead to the criminal prosecution of appellee, we conclude that the trial court did not err in allowing appellee to refuse to testify. Appellant's second assignment of error is without merit.
{¶ 31} For his third assignment of error, appellant claims that the trial court erred by denying his motion to stay and his emergency motion for reconsideration.
{¶ 32} In the case sub judice, the magistrate determined on February 14, 2001, that there was no evidence presented to support a finding that Kenneth was neglected, and thus, granted appellee's motion to dismiss. Thereafter, on March 15, 2001, the trial court issued a nunc pro tunc entry vacating all prior orders. On March 21, 2001, appellant filed a motion to stay the nunc pro tunc entry, which was denied. Thereafter, appellant filed an emergency motion for reconsideration of the stay on March 28, 2001, which was also denied.
{¶ 33} Juv.R. 40(E)(4)(c) provides that:
 {¶ 34} "The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections. An interim order shall not extend more than twenty-eight days from the date of entry unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days." (Emphasis added.)
{¶ 35} In the instant matter, the trial court issued a nunc pro tunc entry on March 15, 2001, vacating any prior orders. The trial court did not err because, pursuant to Juv.R. 40(E)(4)(c), the trial court may make an interim order on the basis of a magistrate's decision when immediate relief is justified without waiting for or ruling on objections by the parties. The trial court's nunc pro tunc entry vacated its prior order awarding temporary custody to appellant. Thus, the trial court's initial temporary custody award to appellee once again took effect. It is our view that the trial court did not abuse its discretion in vacating appellant's temporary custody order. Appellant's third assignment of error lacks merit.
{¶ 36} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
WILLIAM M. O'NEILL P.J., JUDITH A. CHRISTLEY, J. concur.
[1] Appellee was given temporary custody of Kenneth by the trial court, and appellant was provided visitation. The exchanges were to occur at the Lake County Sheriff's Department to avoid problems.
[2] {¶ a} In the nunc pro tunc entry dated March 15, 2001, the trial judge explained that:
 {¶ b} "[t]he Neglect Complaint was dismissed by the Court on February 8, 2001 after evidence was heard and at that time the Court also ruled that all prior orders (including temporary custody) were to be vacated.
 {¶ c} "As this was not indicated in the previous decision, the Court now issues this Nunc Pro Tunc vacating all prior orders."