[Cite as *In re C.L.*, 2021-Ohio-3819.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE C.L., ET AL.

Minor Children

[Appeal by Mother]

:
:
:
:
:

No. 110363

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 28, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-18-907033 and AD-18-907034

***Appearances:***

Judith M. Kowalski, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michelle A. Meyers, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

Cullen Sweeney, Cuyahoga County Public Defender, and Britta Barthol, Assistant Public Defender, *for appellee* A.A.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant, C.L.L., the mother of two children, C.L. and E.L., appeals the juvenile court's grant of custody of the children to their father, A.A. Because the juvenile court (1) did not err in precluding appellant's testimony in this case, (2) did

not abuse its discretion determining the children's best interests were met by awarding custody to A.A., and (3) ordered appropriate restrictions on appellant's visitation with the children, we affirm the judgment.

I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On June 1, 2018, the Cuyahoga County Division of Children and Family Services ("CCDCFS or "the Agency") filed a complaint alleging appellant's children C.L. and E.L. were dependent and requesting protective supervision. On September 10, 2018, the children were found to be dependent after a hearing and placed in protective supervision with the Agency. On September 27, 2018, the Agency filed a motion for leave to amend the disposition from protective supervision to temporary custody. A hearing was held on October 19, 2018, and the juvenile court issued an order committing C.L. and E.L. to the temporary care and custody of the Agency. On October 23, 2018, appellant objected to the decision, and on November 29, 2018, the objections were overruled. On December 4, 2018, the order granting temporary custody of the children to the Agency was approved.

{¶ 3} On May 13, 2019, the Agency filed a motion to extend the order of temporary custody that was granted on June 25, 2019, with the temporary custody being extended to November 30, 2019. On October 9, 2019, the Agency filed a second motion for extension of temporary custody that was granted on February 5, 2020, extending the Agency's custody of the children until May 30, 2020.

{¶ 4} On May 14, 2020, CCDCFS filed a motion to modify temporary custody of the children to legal custody of their father, A.A., with protective

supervision to the Agency. On September 28, 2020, the juvenile court began a hearing on the motion. Social worker Shanara Leonard testified that she was assigned the case in August 2020 and, at the time the Agency filed the complaint alleging the children to be dependent, C.L. was four years of age and E.L. was two years of age. The children had been removed from appellant's care due to concerns about her mental health and her inability to manage the children's behavior. A case plan was developed with the goal of reunification that included appellant receiving mental health services, parenting classes, and assistance for housing.

{¶ 5} Leonard further testified that in conjunction with the case plan, appellant reported that she completed a mental health assessment and had a therapist, but provided no specific information that the Agency could verify. In 2019, appellant was referred for a parenting program but did not complete the program. Further, appellant refused to communicate with the social worker over the phone, expressing that she did not want to be recorded, but did not attend any meetings with the social worker. Appellant was also referred for assistance with housing but did not follow through with the referral. At the time of the hearing in September 2020, appellant was homeless and had been sleeping in her car or bus stations and in hotels when she could.

{¶ 6} After the children were initially removed, the children's father, A.A., began having regular visits. The visits with A.A. were unsupervised by December 2019. In June 2020, the Agency placed the children with A.A., and they remained with him. Leonard testified that she visited the home on multiple occasions and

stated it was safe and that the children had all their basic needs met. The children were further observed smiling and playing with their father. Leonard reported that the children adjusted well to being with their father and that he demonstrated that he can consistently meet their basic needs.

{¶ 7} As to appellant's relationship with her children, Leonard testified that appellant had supervised visitation with the children at first, but that visitation ceased in June 2020. In August 2020, appellant said she wanted visitation with her children, but then said she did not want visitation, stating she did not want to be in a public setting because she did not want others or the children to see her emotional. Further, appellant declined to speak with the children over the phone when given the opportunity.

{¶ 8} After Leonard testified, the court granted appellant a continuance in order to produce witnesses. On January 22, 2021, the hearing resumed and appellant's attorney noted appellant wished to testify, but he advised her not to, stating there was another proceeding in juvenile court in which her testimony could be used against her. The magistrate conducting the hearing asked appellant if she understood that she had a right to remain silent. Appellant answered that "I know I have the right, but I don't agree today." The juvenile court then explained to appellant that she has a right to remain silent and that if she remains silent, nobody can comment on her decision and asked if she understood. Appellant said, "No, I don't understand that."

{¶ 9} Appellant's attorney and the magistrate again attempted to explain her rights to her. After each explanation, appellant wavered in her responses, from stating that she did not understand her rights, to stating that she understood her rights, to stating, "I don't understand the right to remain silent part. I can't understand that one." Appellant also stated that she didn't "understand how I will talk and people will question me, but I can't question them." After the court procedure was explained, appellant stated that "I understand it, but I don't agree with it. I understand some of it." The magistrate again asked appellant if she wanted to waive her right and testify, she responded, "I don't know about the Fifth Amendment right * * * I mean, I don't want to waive that right." Her attorney then asked if she wanted "to be silent and not testify?" Appellant responded "No." Her attorney then explained her right not to testify, and appellant responded that "[t]his whole thing is (inaudible) confused. I don't understand. I just don't. I'm sorry. Everything is all messed up. I don't understand this," and continued by stating "I want to testify, but — I want people questioning me, but I want to have the opportunity to ask other people questions." When explained again that court procedure would not allow her to ask questions, she stated "It's wrong." The magistrate then explained that if appellant testified, she couldn't ask any questions and again asked appellant, "Do you want to waive your Fifth Amendment right to remain silent and testify?" Appellant said "I'm sorry. I can't answer the question. I don't want you to answer it for me either." Appellant was again asked if she wished

to waive her right not to testify. Appellant stated, "I'm sorry. I can't decide on that because I don't think that's the right move for this court case."

{¶ 10} After another discussion of court procedure, appellant indicated that she wanted other people to testify. The following colloquy was then had between the magistrate and appellant:

> THE COURT: Thank you. [C.L.L.], you have a Fifth Amendment right to remain silent. You can waive that and testify here today. Do you want to waive your Fifth Amendment right and testify or do you want to invoke your Fifth Amendment right? Yes or no?
>
> APPELLANT: I can't answer it.
>
> THE COURT: Based on the fact that mother has stated she cannot answer that question, mother has a Fifth Amendment right to remain silent. In order to protect mother's rights, the Court cannot force mother to testify. She cannot give this Court an answer. She has indicated at least twice that she can't answer that question. I cannot force her to testify. No one in this courtroom can. I can't make any inferences, nor can anybody else on the fact that she's not testifying.

{¶ 11} The guardian ad litem ("GAL") testified that he had visited with the father and children on four occasions from August 11, 2020, to the date of the hearing and recommended that the children's best interests would be to grant legal custody to their father and that the mother should have visitation.

{¶ 12} On February 12, 2021, the juvenile court committed the children to the custody of their father with an order of protective supervision to the Agency. The juvenile court further ordered that the Agency continue to facilitate and supervise

visits by appellant.  On February 22, 2021, appellant objected to the order, and the objections were overruled on March 15, 2021.

II.  LAW AND ARGUMENT

A. THE TRIAL COURT ACTED WITHIN ITS DISCRETION BY NOT ALLOWING APPELLANT TO TESTIFY AT THE HEARING

{¶ 13}  Appellant's first assignment of error reads:

The trial court erred to the prejudice of the appellant and against the best interests of the children by denying her the right to testify at trial.

{¶ 14} Appellant argues that she was denied the right to testify and that such denial was an abuse of discretion. The Agency and A.A. argue that because appellant did not knowingly waive her rights, there was no abuse of discretion and appellant suffered no prejudice from that decision.

{¶ 15} In a juvenile court proceeding regarding custody, parents have a Fifth Amendment right not to testify.  *In re Billman*, 92 Ohio App.3d 279, 280-281, 634 N.E.2d 1050 (8th Dist.1993).   "'In a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow.'"   *In re Rock Children*, 5th Dist. Stark No. 2004CA00358, 2005-Ohio-2572, ¶ 17, quoting *Elmer v. Lucas Cty. Children Serv. Bd.*, 36 Ohio App.3d 241, 245, 523 N.E.2d 540 (6th Dist.1987); *In re A.C.*, 8th Dist. Cuyahoga No. 102351, 2015-Ohio-3673, ¶ 5.  Accordingly, it was incumbent upon the juvenile court to ensure that appellant understand her right not to testify

and ensure that any waiver was made with full understanding of the effects of her decision to testify.

{¶ 16} Further, a court has discretion to admit or exclude evidence. Appellate courts review a decision to allow or disallow testimony under an abuse of discretion standard. *Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13CA13, 2014-Ohio-793, ¶ 21; *see also In re M/W Children*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948 (reviewing denial of mother's request for continuance in order to testify for an abuse of discretion). An abuse of discretion is more than an error of law or judgment; it implies that a court has acted in a manner that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} In this case, the record indicates appellant vacillated between stating she understood the right to testify, stating that she wanted to testify and did not want to testify, and indicated that she wanted to testify in order to ask questions from the witness stand. After numerous attempts to determine whether or not appellant understood her right not to testify, the court was unable to satisfy itself that appellant understood her right or voluntarily waived that right. Given that the juvenile court could not determine if appellant understood her right not to testify and its effect and could not determine if appellant did in fact wish to voluntarily

waive her rights, we cannot find that the juvenile court abused its discretion by precluding her testimony.[1]

{¶ 18} The first assignment of error is overruled.

B. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THAT THE BEST INTERESTS OF THE CHILDREN WERE MET BY GRANTING CUSTODY TO THE CHILDREN'S FATHER

{¶ 19} Appellant's second assignment of error reads:

The trial court erred to the prejudice of the appellant and against the best interests of the minor children in awarding legal custody to father.

{¶ 20} Appellant argues that the court erred in its determination that the best interests of her children were served by awarding legal custody to A.A., their father, because he had no relationship with the children prior to the Agency's involvement and the Agency did not do more to investigate A.A.'s care of the children. The Agency and A.A. argue that the trial court properly considered the necessary factors in awarding A.A. custody of his children.

{¶ 21} Where a child is adjudicated to be dependent, R.C. 2151.353(A)(3) provides that the court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." This court has found that:

---

[1] We also note that Evid.R. 103(A) provides that "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Evid.R. 103(A)(2) requires that where a ruling excluding evidence is made, "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The record does not reflect a proffer of appellant's testimony or indicate in any manner what appellant's testimony would be.

> An award of legal custody is "significantly different" than the termination of parental rights. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14. An award of legal custody is "not as drastic a remedy as permanent custody" because, despite losing legal custody of the child, the parent retains residual parental rights, privileges, and responsibilities and can petition the court for a custody modification in the future. *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214, ¶ 7; *In re H.A.I.*, 8th Dist. Cuyahoga No. 97771, 2012-Ohio-3816, ¶ 36-37.

*In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 32. The juvenile court's award of custody is based upon determining the best interest of the child "'based upon a preponderance of the evidence.'" *Id.* at ¶ 44, quoting *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 11. A preponderance of the evidence means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7. "The decision whether to grant or deny a request for legal custody is within the sound discretion of the juvenile court." *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 45.

{¶ 22} When granting custody, the juvenile court is required under R.C. 2151.414(D)(1) to consider "all relevant factors," including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be

achieved without a grant of permanent custody; and (5) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e). As the Supreme Court of Ohio explained, "[R.C. 2151.414(D)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 64.

{¶ 23} Regarding A.A.'s ability to care for his children, the juvenile court found that A.A. had been engaged with the Agency and that his children had been living with him and that he had suitable housing and employment, evidencing means to provide for the basic needs of his children. The record further reflects these findings were supported by the social worker's testimony based upon several visits to A.A.'s home. In contrast, the record reflects that the juvenile court had evidence before it that appellant had stopped visitation with her children and had no contact with them for several months before the custody hearing and that, at the time of the hearing, appellant had unaddressed mental health issues, was homeless, and did not have the means to provide basic needs for her children. The trial court further could consider the wishes of the children. Testimony indicated that C.L. did not wish to visit with appellant and E.L. was silent about her wishes. Additionally, the GAL recommended A.A. be granted custody. The custodial history of the children further supported the trial court's determination that the best interests of the children were met by granting custody to A.A. where the children had lived with him for the past seven months prior to trial.

{¶ 24} The juvenile court's decision to award custody to A.A. demonstrates that it considered all the necessary factors and that its decision was supported by competent, credible evidence. As such, we cannot say that the decision to grant custody of C.L. and E.L. was an abuse of the juvenile court's discretion.

{¶ 25} The second assignment of error is overruled.

C. THE TRIAL COURT'S DETERMINATION THAT APPELLANT WOULD HAVE SUPERVISED VISITATION WAS NOT AN ABUSE OF DISCRETION

{¶ 26} Appellant's third assignment of error reads:

The trial court abused its discretion in granting mother such restrictive visitation that it amounts to a denial of visitation.

{¶ 27} Appellant argues that the visitation granted by the court was so limited that the visitation amounts to "no visitation" where it is supervised by the Agency because appellant presumes that it will "be limited and brief." The Agency and A.A. argue the decision that visitation would be supervised was proper where appellant had not seen the children in months and where the record demonstrated she failed to address the issues that led to the intervention by the Agency.

{¶ 28} "In ordering visitation, the juvenile court must consider the 'totality of the circumstances as they relate to the child's best interest.'" *In re K.D.,* 2017-Ohio-4161, 92 N.E.3d 123, ¶ 27 (9th Dist.), citing *In re M.E.,* 10th Dist. Franklin No. 12AP-684, 2013-Ohio-2562, ¶ 25, quoting *In re C.J.,* 4th Dist. Vinton No. 10CA681, 2011-Ohio-3366, ¶ 15. A court's determination as to visitation is reviewed for an

abuse of discretion. *Id.* at ¶ 26, citing *In re G.S.,* 9th Dist. Summit No. 28050, 2016-Ohio-7471, ¶ 32.

{¶ 29} The record established through the pendency of the case that the Agency conducted supervised visits between appellant and the children. At the time of the custody hearing, there was no evidence that appellant had addressed the issues of her mental health that led to the Agency involvement. Further, appellant had not participated in any recommended services. Moreover, appellant had not visited with her children in several months at the time of the dispositional hearing, despite the social worker's repeated attempts to meet and arrange a visitation schedule. Appellant's behaviors demonstrated that the court did not abuse its discretion by ordering visits to be supervised by the Agency.

{¶ 30} The third assignment of error is overruled.

III.     CONCLUSION

{¶ 31} In determining custody of the children, the juvenile court did not abuse its discretion in precluding appellant's testimony where appellant was unable to make a knowing, intelligent, or voluntary waiver of her right not to testify. The juvenile court further considered the necessary factors in determining that the children's best interests were met by awarding custody to A.A. and that determination was not against the manifest weight of the evidence. Under the totality of the circumstances, an order of supervised visitation for appellant and the children was appropriate and not an abuse of discretion.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MICHELLE J. SHEEHAN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
LISA B. FORBES, J., CONCUR