[Cite as *In re T.R.*, 2015-Ohio-4177.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102071**

# IN RE: T.R.
# Minor Child

## [Appeal By: L.C., Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 14906290

**BEFORE:** E.A. Gallagher, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 8, 2015

**ATTORNEY FOR APPELLANT MOTHER, L.C.**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Cheryl Rice
Assistant Prosecuting Attorney
Cuyahoga County Division of Children and Family Services
3955 Euclid Avenue
Cleveland, Ohio   44115

**GUARDIAN AD LITEM FOR T.R.**

Suzanne H. Adrain-Piccorelli
255 Falmouth
Rocky River, Ohio 44116

**ATTORNEY FOR FATHER, D.R.**

Patricia Bunce
1849 Prospect, Suite 222
Cleveland, Ohio 44115

**GUARDIAN AD LITEM FOR MOTHER**

Pinkie Clark
75 Public Square, 8th Floor
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant L.C. appeals from an order of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting legal custody of her minor son, T.R., to his father, D.R. L.C. contends that her due process rights were violated because the trial court proceeded with the adjudicatory and dispositional hearings when she was not present and that the trial court's decision committing T.R. to the legal custody of his father was against the manifest weight of the evidence. For the reasons that follow, we affirm.

**Factual and Procedural Background**

{¶2} On May 16, 2014, T.R. was placed into protective custody following an ex parte telephonic hearing. On May 19, 2014, the Cuyahoga County Division of Children and Family Services ("CCDCFS") filed a complaint and motion for predispositional temporary custody, alleging that T.R. was an abused, neglected and dependent child and requesting that he be placed in the custody of his father. The complaint centered around two incidents in January 2014 and May 2014 in which L.C. allegedly struck T.R. with an extension cord and a broom handle when disciplining him. The complaint further alleged that L.C. had refused to participate in safety planning or to make an appropriate alternate plan of care for T.R., that L.C. had failed to comply with services to address the

parent-teen conflict in the home and that L.C. had a substance abuse problem that had previously resulted in the removal of T.R. and several of his siblings from the home.

{¶3} A hearing on the motion for predispositional temporary custody was held that same day. Although the magistrate found that reasonable efforts had been made to notify both of T.R.'s parents of the hearing, only his father was present for the hearing.

{¶4} The CCDCFS social worker assigned to the case, Susan Garcia, testified at the hearing. She indicated that in January 2014, CCDCFS received a referral regarding L.C.'s methods of disciplining T.R. The referral arose from an incident in which L.C. had allegedly hit T.R. with an extension cord, leaving marks on his arm. Garcia testified that a second incident of "aggressive * * * disciplining methods" allegedly occurred on May 6, 2014 when L.C. had T.R. stand facing the wall and hit him repeatedly with a broomstick. Garcia reported that after the incident, T.R. left his mother's home and, with his mother's consent, went to stay with his maternal grandmother. However, a short time later, T.R. chose to leave his grandmother's home because it was "just like being at home" and his mother had "complete access to him." A paternal relative brought T.R. to the agency on May 16, 2014.

{¶5} Garcia testified that the agency had attempted to work with L.C. but that she had refused to agree to a safety plan and was not compliant with the in-home Tapestry Community Care services that had been implemented beginning in February 2014 to help L.C. and T.R. work through the issues they were having. Garcia testified that T.R. refused to return to his mother's home and that, when the agency inquired about

alternative relative placements, the only alternative care arrangement L.C. offered was to have T.R. stay with his maternal grandmother. Garcia testified that when T.R. learned that placement with his maternal grandmother might be an option, he began crying because, as he explained to Garcia, "that's just like being at his own home." Garcia testified that T.R.'s father was available as a placement for T.R. and that she had investigated the father's ability to care for T.R. and had no concerns.

{¶6} With respect to whether the agency had any concerns relating to L.C. beyond her "aggressive form of discipline," Garcia testified that T.R. had disclosed that his mother smoked marijuana and had issues with substance abuse and that a paternal relative had indicated that L.C. had mental health issues she was not addressing. Although L.C. was not present at the hearing, Garcia testified that she and her supervisor had attempted to notify both parents of the hearing by telephone and voicemail message.

{¶7} The magistrate found probable cause existed to remove T.R. from his mother's home and that it was not in T.R.'s best interests for him to return to the home. The magistrate granted the agency's motion for predispositional temporary custody and ordered that T.R. be placed in the temporary custody of his father.

{¶8} After the emergency hearing, service of the summons, complaint and related documents was attempted on L.C. via certified mail at her residential address but was returned with an endorsement that it had been "refused." The documents were re-sent to L.C. at the same address via ordinary mail. There is nothing in the record that suggests that L.C. did not receive the documents with which she was served by ordinary mail.

**{¶9}** A preliminary hearing was scheduled for June 17, 2014. L.C. appeared for the hearing. At or shortly before the preliminary hearing, counsel and a guardian ad litem were appointed for L.C. Appointed counsel appeared at the hearing but indicated that he had not had an opportunity to review the complaint with L.C. When the magistrate stated that she would read the complaint aloud, L.C. indicated that she was "not comfortable with this proceeding at all" and requested a continuance so that she could retain her own counsel. The magistrate granted L.C.'s request but advised her that due to "statutory time constraints that must be met," L.C. needed to "have counsel and * * * [be] here ready to go one week from now." L.C. agreed, and the preliminary hearing was continued until June 24, 2014. In its journal entry memorializing the hearing, the trial court stated:

> This matter shall be continued because Mother does not want a court appointed attorney and has stated she will hire her own attorney by the next court date. Mother advised that the next hearing will not be continued.
>
> It is ordered that: This matter is continued to June 24, 2014 at 8:45 a.m. for
>
> a preliminary hearing.

A copy of the journal entry was mailed to L.C. L.C. also signed a notice of hearing indicating that she had received notice of the June 24, 2014 hearing.

**{¶10}** Neither parent appeared for the June 24, 2014 hearing. Because the parents failed to appear and the CCDCFS social worker failed to file the case plan, the magistrate once again continued the matter, setting the matter for a final pretrial on July 29, 2014,

trial on August 5, 2014 and a dispositional hearing on August 7, 2014. A copy of the journal entry setting these dates was sent to L.C. via ordinary mail.

{¶11} CCDCFS thereafter filed an amended case plan that included L.C. and T.R.'s active participation in Tapestry services and L.C.'s completion of a random urine screen and mental health assessment and compliance with any related recommendations.

{¶12} Neither L.C. nor D.R. appeared for the July 29, 2014 hearing.[1] The trial court continued the matter for an adjudicatory hearing on August 5, 2014 and a dispositional hearing on August 7, 2014. A copy of the journal entry from the July 29, 2014 hearing was sent to L.C. via ordinary mail. There is nothing in the record that suggests that any of the documents or notices sent to L.C. via ordinary mail were returned to the court or were otherwise not received by L.C.

{¶13} L.C. did not appear on August 5, 2014,[2] and the matter was again continued to August 7, 2014 "for parties to be present." On August 7, 2014, after indicating that "service [had been] issued to the mother" notifying her of the proceeding and waiting 25 minutes for L.C. to appear or contact the court, the magistrate proceeded with the adjudicatory hearing. L.C. never appeared. She did not request a continuance and did not otherwise communicate with the court regarding her failure to appear. The assistant

---

[1] Counsel for D.R., however, did appear.

[2] The assistant prosecuting attorney for CCDCFS, D.R., D.R.'s counsel and the guardian ad litem for T.R. were present on August 5, 2014. L.C. and the guardian ad litem for L.C. were not present.

prosecuting attorney for CCDCFS, D.R., D.R.'s counsel and the guardians ad litem for T.R. and L.C. were present for the adjudicatory and dispositional hearings.

{¶14} The CCDCFS social worker, Garcia, testified at the adjudicatory hearing. Similar to her testimony at the hearing on the predispositional motion, Garcia testified that CCDCFS became involved in the case in January 2014 following an incident in which L.C. had allegedly "whipped" T.R. with an extension cord. Garcia indicated that CCDCFS investigated the allegations and developed a safety plan with T.R.'s maternal grandmother and that the matter was then transferred for ongoing services and monitoring. Garcia testified that L.C. initiated in-home Tapestry services and that CCDCFS had referred her to the West Side Community House for neighborhood collaborative services but that "her follow-through with the services [was] not good at all." Garcia explained that L.C. met with the Tapestry worker only twice after the initial referral and would not keep appointments. Garcia testified that CCDCFS learned of a second incident in May 2014 when T.R. was brought to the agency by a paternal relative after he ran away from home. Garcia testified that T.R. told her he ran away because his mother made him stand facing the wall while she beat him with a broomstick. A CCDCFS staff worker spoke with L.C. regarding the incident. L.C. denied the allegations.

{¶15} This was not the first time CCDCFS had been involved with the family. In 2000 or 2001, CCDCFS became involved with the family after L.C. tested positive for

marijuana when T.R. was born. Garcia explained that at that time, T.R. and four siblings were adjudicated neglected and were removed from L.C.'s care.

**{¶16}** Garcia testified that in response to the new allegations relating to the May 2014 incident, CCDCFS held an emergency "staffing" meeting to discuss what should be done. Although L.C. was invited to participate in the meeting, she did not attend and would not answer her telephone. L.C. sent her 17-year-old daughter to pick T.R. up from the meeting.

**{¶17}** Garcia stated that in addition to her concerns regarding L.C.'s disciplinary methods, she had concerns about whether L.C. was smoking marijuana. She testified that she had attempted to discuss the issue with L.C. but was unable to do so because each time Garcia went to the home, L.C. was not there. Garcia, therefore, sent a letter to L.C. along with a copy of an amended case plan adding services related to the allegation of marijuana use. CCDCFS also believed that L.C.'s "behaviors" warranted a mental health assessment.

**{¶18}** Garcia testified that D.R. is employed and made arrangements for T.R. to stay with other family members while he is at work. She testified that since T.R. has been in his father's care, all of his needs have been met, that T.R. has been participating in summer activities and that "[i]t seems to be going very well."

**{¶19}** Based on the evidence presented, the magistrate determined that there was clear and convincing evidence that T.R. was an abused, neglected and dependent child.

With the agreement of the parties present, the matter proceeded immediately to disposition.

{¶20} CCDCFS requested that Garcia's testimony from the adjudicatory hearing be incorporated into the disposition proceeding. The magistrate granted the request, then heard further testimony from Garcia. The guardian ad litem also spoke regarding her report and recommendation.

{¶21} Garcia testified that she did not believe T.R. should be returned to his mother's care and custody and recommended that legal custody be granted to T.R.'s father because "right now [T.R.] is doing way better with his father." She explained that there had been "a lot of parent and teen conflict" between T.R. and his mother that "resulted in a lot of his behaviors that [L.C.] felt were an issue" but that she believed D.R. had been dealing with those behaviors appropriately.

{¶22} With respect to L.C.'s home, Garcia testified that L.C. had refused to permit Garcia to go inside the home but that from what she was able to observe from outside the home, she had "no major concerns." With respect to the services CCDCFS offered to prevent removal, Garcia testified that L.C. had initiated services through Tapestry and that CCDCFS had made a referral to the West Side Community House but that L.C. did not follow through with these services. Garcia testified that CCDCFS had also assisted L.C. in obtaining beds for her children and that the amended case plan included services for substance abuse and a mental health assessment but that the agency "really wasn't able to offer her anything else" because every time Garcia went to the home, L.C.

informed her that she "was out of jurisdiction and was not allowed at her home." CCDCFS performed an assessment to determine whether D.R. required any services and it was determined that he needed no services.

{¶23} T.R.'s guardian ad litem likewise recommended that legal custody be granted to D.R. She stated that D.R. was "doing a great job with his son" and that she found T.R. to be "extremely polite and well mannered" and "[v]ery respectful of his father." She stated that T.R. was enjoying football and was "enthusiastic about starting school in the fall." She stated that T.R. was "very reluctant" to return to his mother's home "because he did not want to be beaten by an extension cord or broomstick" and was "frustrated" because his mother "didn't really give Tapestry a chance."

{¶24} The magistrate determined that CCDCFS had made reasonable efforts to return T.R. to his mother's home and that it was in T.R.'s best interests that legal custody be granted to his father. Accordingly, the magistrate ordered that T.R. be committed to the legal custody of D.R.[3]

---

[3]In determining that it would be in T.R.'s best interest to be committed to the legal custody of his father, the magistrate made the following factual findings:

The Court finds that [CCDCFS] has made reasonable efforts to prevent the removal of the child, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home. Services offered to Mother were Tapestry services at her request and then failed to participate in those services. CCDCFS offered a mental health assessment, substance abuse assessment and assistance with basic needs. Mother is not compliant and refuses to cooperate with Agency. There were no recommendations for Father and no services are needed. Child is doing very well with Father. Child wishes to remain in the father's custody.

**{¶25}** On August 20, 2014, L.C., pro se, filed objections to the magistrate's decision. On September 11, 2014, the trial court overruled the objections and affirmed, approved and adopted the magistrate's decision granting legal custody of T.R. to D.R.

**{¶26}** L.C. appealed the trial court's decision, assigning the following two assignments of error for review:

> Assignment of Error I: The trial court denied the appellant due process of law when it proceeded without her at the adjudication and dispositional hearing.

> Assignment of Error II: The trial court erred in accepting the magistrate's decision committing the child to the legal custody of D.R. as it was against the manifest weight of the evidence.

## Law and Analysis

### Proceeding with the Adjudicatory and Dispositional Hearings

**{¶27}** In her first assignment of error, appellant contends that her due process rights were violated because the trial court proceeded with the adjudicatory and dispositional hearings when she was not present. She argues that the case should have been continued as it was on the prior occasions on which she had failed to appear.

**{¶28}** Parents have a constitutionally protected interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "'The right to parent one's children is a fundamental right' * * * protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *In re B.W.*, 8th Dist. Cuyahoga No. 102475, 2015-Ohio-2768, ¶ 21, quoting *In re C.F.*, 113 Ohio St.3d 73,

2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. "A fundamental requirement of due process is the 'opportunity to be heard' at a 'meaningful time and in a meaningful manner.'" *In re B.W.* at ¶ 21, quoting *In re L.F.*, 9th Dist. Summit Nos. 27218 and 27228, 2014-Ohio-3800, ¶ 39.

**{¶29}** With respect to the continuance of juvenile court hearings, Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Loc.R. 49(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, further provides:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

**{¶30}** The decision whether to grant a continuance is within the "broad, sound discretion" of the trial court and will not be reversed absent an abuse of discretion. *In re S.C.*, 8th Dist. Cuyahoga No.102350, 2015-Ohio-2410, ¶ 23; *In re L.S.*, 8th Dist. Cuyahoga No. 95809, 2011-Ohio-3836, ¶ 21. An abuse of discretion occurs where the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶31}** In support of her claim that the trial court should have granted a continuance, L.C. cites to case law that recognizes that where a parent facing the termination of parental rights has communicated with the trial court or with counsel to explain a problem with attending a scheduled hearing, the failure of the trial court to take "extra care" to ensure the parent could be present is an abuse of discretion. *See In re*

*Trevor W.*, 6th Dist. Lucas No. L-01-1371, 2001 Ohio App. LEXIS 5307, *8 (Nov. 30, 2001), citing *In the Matter of: Veronica [D.],* 11th Dist. Ashtabula No. 98-A-0054, 2000 Ohio App. LEXIS 1400 (Mar. 31, 2000), and *In the Matter of: Lena [D.]*, 11th Dist. Geauga No. 96-G-2020, 1997 Ohio App. LEXIS 5561 (Dec. 12, 1997). However, these cases are distinguishable.

{¶32} First, this is not a case involving the termination of parental rights. This is a legal custody case. An award of legal custody is "significantly different" than the termination of parental rights. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14. An award of legal custody is "not as drastic a remedy as permanent custody" because, despite losing legal custody of the child, the parent retains residual parental rights, privileges, and responsibilities and can petition the court for a custody modification in the future. *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214, ¶ 7; *In re H.A.I.*, 8th Dist. Cuyahoga No. 97771, 2012-Ohio-3816, ¶ 36-37. Second, this is not a case in which a parent communicated with the trial court or counsel, explained a problem with attending a scheduled hearing and the trial court thereafter failed to take steps to ensure the matter would be heard when the parent could be present.

{¶33} "[A] parent's right to be present at a custody hearing is not absolute." *In re C.G.*, 9th Dist. Summit No. 26506, 2012-Ohio-5999, ¶ 19, citing *In re J.S.*, 9th Dist. Lorain No. 10CA009908, 2011-Ohio-985, ¶ 17; *see also In re Pedro R.*, 6th Dist. Lucas No. L-04-1017, 2005-Ohio-539, ¶ 9 ("A transfer of legal custody does not divest a parent

of his fundamental parental rights; and such a parent remains free to petition the courts for a custody modification at any time. * * * Accordingly, due process does not mandate that a parent be present at a hearing to change legal custody of a child."), citing *In the matter of Holewinski*, 6th Dist. Lucas No. L-92-216, 1993 Ohio App. LEXIS 2452 (May 14, 1993). Even when termination of parental rights is at stake, parents "must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed" if the court proceeds with a hearing in their absence. *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.); *In re C.G.* at ¶ 19.

{¶34} In *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), the Ohio Supreme Court identified certain factors to be considered in determining whether a continuance is appropriate. These factors include:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case

*Id.* at 67-68.

Not every failure to grant a continuance violates due process "'even if the party fails to offer evidence or is compelled to defend without counsel.'" *In re C.G.* at ¶ 9, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

**{¶35}** In this case, the court scheduled five hearings: on May 19, 2014, June 17, 2014, July 29, 2014, August 5, 2014 and August 7, 2014. The record reflects that despite having notice of each of the hearings, L.C. attended only the hearing on June 17, 2014. L.C. does not challenge the trial court's finding that she was properly served with notice of the adjudicatory and dispositional hearings and does not claim that she did not receive timely notice of the hearings. L.C. never contacted the court to request a continuance or otherwise advised the court or counsel that she could not attend the adjudicatory and dispositional hearings. Indeed, L.C. has never explained why she did not appear for the August 7, 2014 hearings (or any of the other hearings she failed to attend).

**{¶36}** L.C. argues in her brief that she "may have been having a difficult time retaining counsel." However, there is nothing in the record that supports this contention. L.C. never contacted the court to request more time in which to secure counsel. She merely failed to appear at the hearings of which she had received notice.

**{¶37}** L.C. also claims that the trial court failed to "properly inform [her] of the great importance of [retaining counsel] in a timely fashion" or that "a failure to appear in a timely fashion would result in the termination of her parental rights of T.R." This argument is also meritless.

**{¶38}** As noted above, at issue was CCDCFS's request to have T.R. committed to the legal custody of his father; no request had been made to terminate L.C.'s parental rights. Accordingly, a failure to timely appear could not have resulted in the termination

of L.C.'s parental rights and the trial court did not err in failing to advise L.C. of that fact.

{¶39} Likewise, there is no support for L.C.'s claim that the trial court's judgment should be reversed because it failed to advise L.C. of the "great importance" of retaining counsel "in a timely fashion." The record reflects that L.C. was initially appointed counsel to represent her at the June 17, 2014 hearing but that L.C. informed the court that she was not comfortable with the proceedings and wanted to retain her own counsel. The record further reflects that when L.C. requested a continuance to retain her own counsel, the magistrate engaged in a dialogue with her, explaining that she needed to have counsel and be ready to proceed by the following week due to "statutory time constraints." L.C. indicated that she understood and agreed that she would retain counsel and be in court "ready to go" on June 24, 2014. Accordingly, the record reflects that the magistrate did, in fact, discuss the importance of timely retaining counsel with L.C. The trial court was under no obligation to further explain to L.C. the "great importance" of timely retaining counsel.

{¶40} In this case it was not the trial court's failure to take steps to ensure that the hearings would be held when L.C. could be present but L.C.'s own actions — i.e., her failure to timely retain counsel after choosing not to proceed with appointed counsel, her unexplained failure to appear at the hearings and her failure to communicate with the court to explain her absence and request a further continuance if needed — that prevented her from being heard.

**{¶41}** The trial court's decision to proceed with the adjudicatory and dispositional hearings without L.C. was not arbitrary, unreasonable or unconscionable. Accordingly, we find no abuse of discretion by the trial court in not continuing the adjudicatory and dispositional hearings and we find no violation of L.C.'s right to due process.

**Manifest Weight of the Evidence**

**{¶42}** In her second assignment of error, L.C. argues that the trial court's decision granting legal custody of T.R. to D.R. was against the manifest weight of the evidence. L.C. argues that "the record lacks competent, credible evidence to support a finding that such placement was in the best interests of the child" and that the trial court, therefore, abused its discretion in adopting the magistrate's decision granting legal custody of T.R. to D.R.

**{¶43}** In this case, T.R. was adjudicated an abused, neglected and dependent child. L.C. does not challenge this determination. Pursuant to R.C. 2151.353(A)(3), once a child is adjudicated abused, neglected or dependent, a juvenile court may award legal custody of the child to any parent or person who files a motion requesting legal custody. "Legal custody" is

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21).

{¶44} When a juvenile court awards legal custody following an adjudication of abuse, neglect or dependency, "it does so by examining what would be in the best interest of the child based on a preponderance of the evidence." *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 11, 14 (best interest of the child is "of paramount concern" when making custody determinations); *In re D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 17 ("Assuming the person seeking legal custody has complied with any statutory requirements, the court's authority to award legal custody under this statute 'is limited only by the best interest of the child.'"), quoting *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, ¶ 3; *see also In re W.A.J.* at ¶ 2 (preponderance of the evidence standard applies to trial court's factual findings when determining legal custody). "Preponderance of the evidence" means "'evidence that is more probable, more persuasive, or of greater probative value.'" *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52.

{¶45} The decision whether to grant or deny a request for legal custody is within the sound discretion of the juvenile court. *In re R.R.*, 9th Dist. Summit No. 23641, 2007-Ohio-4808, ¶ 11, citing *In re M.S.*, 9th Dist. Summit No. 22158, 2005-Ohio-10, ¶ 11. Accordingly, when reviewing the trial court's "'ultimate decision on whether the facts as determined would make it in the child's best interests to be placed in legal custody,'" we apply an abuse of discretion standard. *In re W.A.J.* at ¶ 2, quoting *In re G.M.*, 2011-Ohio-4090, at ¶ 14. We likewise review the trial court's decision to accept

or reject the magistrate's decision for abuse of discretion. *In re S.E.,* 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 13.

**{¶46}** Where a custody determination is supported by "competent, credible evidence" it will not be reversed as being against the manifest weight of the evidence. *In re S.D.,* 8th Dist. Cuyahoga Nos. 99410, 99411, and 99412, 2013-Ohio-3535, ¶ 13, citing *In re B.M.,* 8th Dist. Cuyahoga No. 96214, 2011-Ohio-5176, ¶ 32. Based on the record before us, we cannot say that the trial court's decision granting legal custody of T.R. to D.R. is against the manifest weight of the evidence.

**{¶47}** Unlike permanent custody cases in which the trial court is guided by the factors specified in R.C. 2151.414(D) in determining what is in a child's best interest, R.C. 2151.353(A)(3) does not list specific factors a court should consider in deciding what is in the child's best interest in determining legal custody. *In re G.M.,* 2011-Ohio-4090, at ¶ 15. As this court has previously stated, "[w]e must presume that, in the absence of best interest factors in a legal custody case, 'the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody.'" *In re D.T.,* 2014-Ohio-4818, at ¶ 20, citing *In re G.M.* at ¶ 16.

**{¶48}** Although there is no "specific test or set of criteria" that must be followed in determining what is in a child's best interest in a legal custody case, this court has held that the R.C. 2151.414(D) factors may be "instructive." *In re D.T.* at ¶ 20, citing *In re E.A.,* 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 13. These factors include: the interaction of the child with the child's parents, relatives and caregivers; the wishes of the

child, as expressed directly by the child or through the child's guardian ad litem; the custodial history of the child; and the child's need for a legally secure permanent placement.   R.C. 2151.414(D).

{¶49} L.C. argues that the trial court abused its discretion in awarding legal custody of T.R. to D.R. because the trial court "did not consider all of the best interest factors when it made its disposition determination."   L.C. asserts that she alone had been providing for T.R. until he was removed from her care in May 2014 and that "[t]here was no testimony to suggest" that D.R. was active in T.R.'s life prior to that time.   L.C.'s assertions are not supported by the record. Rather, the record reflects that D.R. had been paying child support because, after the magistrate ordered that T.R. be committed to the legal custody of D.R.,   she told D.R. what he could do to stop his child support payments.

{¶50} L.C. also contends that the trial court's legal custody determination should be overturned because Garcia testified that she had visited L.C.'s home and had  "no concerns."   L.C., however, misstates Garcia's testimony.   Although Garcia testified that, from what she was able to observe, she had "no major concerns" related to L.C.'s home, she also indicated that L.C. had refused to allow Garcia to go inside the home.   Garcia detailed her concerns related to L.C.'s disciplinary methods, possible substance abuse and mental health issues.

{¶51} L.C. further argues that the trial court relied on improper "hearsay testimony" when making its legal custody determination.   L.C. asserts that T.R. was

"certainly old enough" to testify "regarding his wishes for placement" and claims that because T.R. did not testify and no photographs of his injuries were introduced into evidence at the hearing, there was insufficient evidence to prove the allegations that L.C. had beaten T.R. with a broom handle or smoked marijuana. However, L.C. did not object to this testimony below and did not raise the issue in her objections to the magistrate's decision. Thus, she has waived all but plain error. *In re S.E.*, 2011-Ohio-2042, at ¶ 17; *In re T.J.,* 8th Dist. Cuyahoga Nos. 99877 and 99878, 2013-Ohio-5434, ¶ 8.

{¶52} We find no plain error in this case. In a dispositional hearing on a motion for legal custody, the juvenile court is permitted to "admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Juv.R. 34(B)(2); R.C. 2151.35(B)(2)(b); *In re T.J.* at ¶ 9; *see also In re J. T.*, 3d Dist. Wyandot No. 16-10-12, 2011-Ohio-3435, ¶ 29-33. There is no dispute that Garcia's testimony regarding T.R.'s allegations that L.C. had beaten him with a broom handle and smoked marijuana was both relevant and material in determining whether granting legal custody to D.R. was in T.R.'s best interest. Further, L.C. has not challenged the trial court's finding, based on these allegations, that T.R. was an abused and neglected child. With respect to T.R.'s wishes regarding placement, R.C. 2151.414(D)(1)(b) provides that a child's wishes may be expressed by the child directly or through the child's guardian ad litem. Accordingly, the trial court did not abuse its discretion in admitting this testimony for purposes of its dispositional determination.

**{¶53}** Finally, L.C. argues that from May 16, 2014 (when T.R. was removed from her care) until August 7, 2014 (when the dispositional hearing was held) was "not an adequate period of time" for the trial court to find that she was not compliant with the services offered to her by the agency. However, the record reflects that L.C. repeatedly refused to cooperate with the agency's efforts to engage her in services. Although Tapestry services were put in place in February 2014 after CCDCFS referred the first report of "aggressive discipline" by L.C., L.C. met with the Tapestry services worker only twice after the initial referral. She failed to attend meetings or keep appointments and refused to even speak with Garcia regarding the allegations of her substance abuse. There is nothing in the record to suggest that had she been given more time, L.C. would have complied with the case plan.

**{¶54}** The record reflects that T.R. and his mother had a conflicted relationship, resulting in two incidents in which L.C. beat T.R. first with an extension cord and then with a broom handle after which T.R. ran away from home. The record further reflects that T.R. informed both the CCDCFS social worker and his guardian ad litem that he did not want to return to his mother's care because he was afraid of being beaten. Although L.C. initiated Tapestry services in an attempt to address her parent-teen conflict with T.R., she failed to follow through with the case plan services offered her to help her regain custody of her son and refused to cooperate with CCDCFS.

**{¶55}** On the other hand, the record reflects that T.R. had a good relationship with his father. Garcia testified that T.R. had been thriving since D.R. obtained

predispositional custody of T.R., that D.R. had been dealing with T.R.'s teen behaviors appropriately, that D.R. was employed and able to meet T.R.'s needs and that CCDCFS had no concerns regarding D.R. caring for T.R.

{¶56} Based upon a careful review of the record, we find no abuse of discretion by the juvenile court in adopting the magistrate's decision and entering an order of legal custody. Competent, credible evidence supports the juvenile court's determination that a grant of legal custody to D.R. was in T.R.'s best interest. L.C.'s second assignment of error is overruled.

{¶57} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR