# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106557**

---

## IN RE: D.S.

## A Minor Child

[Appeal By Mother]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 16902940

**BEFORE:** Jones, J., E.A. Gallagher, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 20, 2018

**[Cite as *In re D.S.*, 2018-Ohio-3794.]**
**ATTORNEY FOR APPELLANT**

Patrick S. Lavelle
Van Sweringen Arcade, Suite 250
123 West Prospect Avenue
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE**

**For CCDCFS**

Michael C. O'Malley
Cuyahoga County Prosecutor

Amy L. Carson
Cheryl Rice
Assistant County Prosecutors
Department of Children and Family Services
3955 Euclid Avenue
Cleveland, Ohio 44115


**Guardian ad litem for D.S., Child**

Michael S. Weiss
602 Rockefeller Building
614 Wet Superior Avenue
Cleveland, Ohio 44113


**Guardian ad litem for A.S., Mother**

Pamela A. Hawkins
P.O. Box 43101
Richmond Hts., Ohio 44143

**For G.P., Father**

James R. Skelton
309 Main Street
Coshocton, Ohio 43812

Michael B. Telep
4438 Pearl Road
Cleveland, Ohio 44109

LARRY A. JONES, SR., J.:

{¶1} Mother-appellant appeals the decision of the trial court to grant legal custody of her son, D.S., to his paternal aunt. For the reasons that follow, we affirm.

{¶2} D.S. was born on July 15, 2009. In February 2016, the Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint alleging that D.S. was abused and dependent.[1]

{¶3} Mother stipulated to an amended complaint and D.S. was adjudicated abused and dependent and was placed in the temporary custody of CCDCFS. In January 2017, CCDCFS moved for permanent custody. In June 2017, CCDCFS amended its motion and asked that legal custody of D.S. be given to his paternal aunt, C.J. The court held a hearing on the matter at which the following pertinent evidence was presented.

{¶4} D.S. was removed from Mother's care in February 2016 due to injuries and bruises on his arms, back, and face. Following his removal, CCDCFS developed a case plan for Mother that included Mother's participation in parenting, anger management, and mental health services. The case plan was later amended to add a substance abuse assessment after an agency worker documented that Mother smelled like alcohol when she arrived for her visits with D.S.

{¶5} In March 2016, Mother was charged with child endangering stemming from the injuries to D.S. She did not appear in court and a warrant was issued for her arrest.

---

[1]The complaint also alleged that J.S., D.S.'s half-brother, was dependent. In April 2016, J.S. was placed in the legal custody of his father; therefore, this appeal does not concern J.S.

**{¶6}** At the time of the July 2016 dispositional hearing, Mother had yet to engage in her case plan services. The following month, in August 2016, Mother entered an alcohol detox program, but did not follow through with an assessment or treatment. Mother also met with a mental health service provider but failed to follow through and the service provider discharged her in September 2016.

**{¶7}** As mentioned, CCDCFS filed a motion requesting permanent custody of D.S. in January 2017. At that time, Father was incarcerated and is not expected to be released until 2037.

**{¶8}** In February 2017, Mother began a 30-day, inpatient substance abuse treatment program. After completing the program, Mother was recommended for intensive outpatient treatment. She was discharged in March 2017 for noncompliance with that program.

**{¶9}** By this time, D.S. had been in agency custody for 12 months and had been in foster placement the entire time, except for a five-day stay with a relative. C.J. was identified as a willing relative that was able to care for D.S., and he was placed with her in March 2017.

**{¶10}** D.S. had to repeat the first grade and had some behavioral issues at school, including getting in fights. He was on medication to address his Attention Deficit Hyperactivity Disorder. His CCDCFS social worker thought he was doing much better since being in C.J.'s care.

**{¶11}** In May 2017, Mother's child endangering case resumed. The municipal court placed Mother in a selective intervention program and her probation officer integrated her agency case plan into her probation program. It was at this time that Mother started engaging in case plan services. Mother went to Life Solutions, a service provider located in the building where she lived, and completed parenting and anger management classes. Mother also went to two service providers to begin addressing her mental health needs.

**{¶12}** Despite Mother's engagement in services, she was arrested on August 9, 2017, after getting into an altercation with her 13-year-old son and her grandmother, who had legal custody of her son. Mother was drinking at the time. In September 2017, the municipal court put an ankle monitor on Mother to monitor her drinking.[2]

**{¶13}** By the time of the October 5, 2017 legal custody hearing, Mother had completed two mental health counseling sessions and had also been prescribed medication to address her depression. She had an appointment to begin intensive outpatient treatment and was attending two to three court-ordered Alcoholics Anonymous meetings a week. Mother previously had stable housing but needed to find new housing and had not done so as of the legal custody hearing. She was also unemployed and, according to the CCDCFS social worker, had been unemployed for the past ten years.

---

[2]The municipal court docket indicates that a warrant was issued on April 4, 2018, for Mother's arrest for failure to appear for a compliance hearing in her child endangering case. The warrant was active as of August 27, 2018.

**{¶14}** Mother visited with D.S. two to three times a month and the visits were appropriate. In the past, as mentioned, Mother showed up to visits smelling like alcohol. Mother also had a supportive parenting coach assigned to her to assist with visits but was discharged from that program after missing three visits. Mother was scheduled to continue with her Life Solutions social worker through June 2018. The Life Solutions social worker thought that Mother had benefitted from services and was motivated to regain custody of D.S.

**{¶15}** D.S.'s aunt, C.J., testified that she understood that Mother and Father retained "residual parental rights" that included the privilege of reasonable visitation. She testified that she had always cooperated with visitation and would continue to facilitate visits between Mother and child.

**{¶16}** The child's guardian ad litem ("GAL") recommended that D.S. be placed in the legal custody of C.J. The GAL noted that D.S. was doing well in C.J.'s care and, although too young to express his wishes on placement, appeared to be comfortable and "very happy" in C.J.'s home. Although the child had some behavioral issues, C.J. had taken steps to ensure that the child was involved with services in the home and school to address these issues. C.J.'s home was appropriate, she was meeting all of D.S.'s needs, and C.J. and D.S. had formed a bond.

**{¶17}** The trial court granted the agency's motion, placing D.S. in C.J.'s legal custody.

**{¶18}** Mother filed a notice of appeal and raises two assignments of error for our review.

> I. The trial court's award of legal custody to a relative, despite DCFS's failure to make reasonable efforts to eliminate the continued removal of the children from their home and to return the child to their home, violated state law and appellant's right to due process of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article 1 of the Ohio Constitution.

> II. The trial court's decision to award legal custody to a relative was against the manifest weight of the evidence.

**{¶19}** Pursuant to R.C. 2151.353(A), after a child has been adjudicated abused, neglected, or dependent, the court may "[a]ward legal custody of the child to * * * any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." R.C. 2151.353(A)(3). An award of legal custody does not divest parents of residual parental rights and responsibilities and does not permanently foreclose the right of either parent to regain custody in accordance with the law. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 23; *see also* R.C. 2151.42.

**{¶20}** The court must determine the appropriateness of legal custody in accordance with the best interest of the child as supported by a preponderance of the evidence presented at the dispositional hearing. *See In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44. A "preponderance of the evidence" is "'evidence that is more

probable, more persuasive, or of greater probative value.'" *Id.*, quoting *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7. The factors listed under R.C. 2151.414(D) may be instructive in determining what is in a child's best interest in a legal custody case. *In re T.R.* at ¶ 48. Those factors include: the interaction of the child with the child's parents, relatives, and caregivers; the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; the custodial history of the child; and the child's need for a legally secure permanent placement. R.C. 2151.414(D). A decision regarding legal custody is within the sound discretion of the juvenile court. *In re T.R.* at ¶ 45.

**Reasonable Efforts**

{¶21} In the first assignment of error, Mother contends that the trial court failed to make a reasonable efforts finding in its order granting legal custody and the agency did not make reasonable efforts at reunification.

{¶22} R.C. 2151.419(A)(1) requires a determination as to whether the public children's services agency made reasonable efforts to prevent removal, to eliminate continued removal, or to return the child safely to the home. The agency has the burden of proving it made reasonable efforts. *Id.* Pursuant to R.C. 2151.419(B), the court is required to "issue written findings of fact setting forth the reasons supporting its determination" and "shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home."

**{¶23}** In this case, the court made a finding that CCDCFS made reasonable efforts. It also made written findings of fact supporting this determination and set forth the relevant services provided by the agency, including "substance abuse treatment, parenting classes, decision making, and mental health." The court found that Mother had not made significant progress in alleviating the cause for the removal of the child from the home and return to the Mother's home would be against the child's best interest. Although brief, the written findings of fact were sufficient in that they explained that the reason the child could not be returned to the home was because Mother had not made significant progress in alleviating the cause for D.S.'s removal. Moreover, the court's determination that the agency used reasonable efforts to reunify D.S. and his mother is supported by the record.

**{¶24}** The agency developed a case plan for Mother to address her issues with parenting, anger management, substance abuse, and mental health. The CCDCFS caseworker made numerous referrals for Mother to engage in the services enumerated on the case plan. Mother was referred to Life Solutions to address her issues with parenting and anger management. Life Solutions offered services in the building in which Mother lived. Mother did not go to Life Solutions until D.S. had been out of her care for 16 months.

**{¶25}** Mother was also referred to Orca House, an organization Mother was familiar with, for parenting services. Mother did not go to Orca House for parenting services but did go to Orca House "a couple times" between August 2016 and February

2017 to "detox" off of alcohol. She did not, however, pursue treatment for alcohol addiction until February 2017. Mother then completed a 30-day program and was recommended to start intensive outpatient treatment but did not follow through and was discharged the next month. From March 2017 to the date of the legal custody hearing in October 2017, Mother did not re-engage in substance abuse treatment.

{¶26} To address Mother's issues with mental health, the agency referred her in June 2016 to complete a psychological evaluation with the Cuyahoga County Juvenile Court Clinic. Mother failed to show up for any of the appointments scheduled with the court's clinic. The agency then made arrangements for Ohio Guidestone to come to an agency meeting to meet with Mother and attempt to involve her with their mental health programs. Mother did not follow through with Ohio Guidestone and they closed her case out in September 2016. Mother re-engaged in mental health treatment shortly before the October 2017 custody hearing, when she went to Care Alliance for counseling and Murtis Taylor for medication. Mother began medication for depression two weeks before the legal custody hearing.

{¶27} In light of the above, the trial court did not err when it found that the agency made reasonable efforts.

{¶28} Therefore, the first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶29} In the second assignment of error, Mother argues that the trial court's decision to grant legal custody of D.S. to his paternal aunt is against the manifest weight of the evidence.

{¶30} The trial court determined that D.S.'s return to Mother's home would be contrary to the child's best interest; the record supports the award of legal custody as being in D.S.'s best interest.   D.S. was initially adjudicated as abused and dependent. Mother did not substantially comply with her case plan, Father was serving a long-term prison sentence, and D.S. was in need of a legally secure placement.

{¶31} The agency developed a case plan for Mother and referrals were made for her to engage in a variety of services to address her issues.   Parenting and anger management classes were even available to her in the building she lived in; but Mother failed to engage in services until her probation officer integrated her case plan into her court-ordered intervention program.   Thus, Mother did not progress on her case plan until almost a year after the agency implemented the case plan.   Moreover, it was after Mother took parenting and anger management classes that she was arrested when she got into an altercation with her grandmother and 13-year-old son while under the influence of alcohol.   Thus, as of the legal custody hearing, Mother was only at the early stages of addressing her mental health, anger management, and substance abuse problems and had not established a long period of sobriety.   Mother also did not have stable housing or employment.

{¶32} D.S. was removed from Mother's custody in February 2016, after he suffered injuries to his arms, back, and face while in her care. D.S. remained in the custody of CCDCFS from that date until he was placed into the legal custody of his paternal aunt. D.S. had not been in his mother's care for 18 months at the time of the legal custody hearing — he was six years old when he entered agency custody and eight years old when he achieved permanency with his aunt.

{¶33} C.J., D.S.'s aunt, is able to provide a safe and stable home for the child. His aunt is ensuring that he receives services to address his behavioral issues, is able to manage these behaviors in her home, is actively involved in D.S.'s school, and is facilitating visitation between Mother and D.S.

{¶34} Based on the record before us, we find that the juvenile court did not abuse its discretion in determining an award of legal custody was in the best interest of D.S.

{¶35} We find the trial court's decision was supported by a preponderance of the evidence and was not against the manifest weight of the evidence. The second assignment of error is therefore overruled.

{¶36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR