[Cite as *In re A.R.*, 2023-Ohio-1038.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE  A.R., ET AL. | : | |
| | | Nos. 111690 and 111746 |
| Minor Children | : | |
| | | |
| [Appeals by I.C., Mother, and C.C., C.C., Father] | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  March 30, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 19910958, AD19910959, and AD19910960

---

### *Appearances:*

Valore & Gordillo LLP and Dean M. Valore, *for appellant* Mother.

Rachel A. Kopec, *for appellant* Father.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and John Holzheimer, Assistant Prosecuting Attorney, for *appellee*.


MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant I.C. ("Mother") and appellant C.C. ("Father") appeal from the judgments of the Cuyahoga County Court of Common Pleas, Juvenile Division,

granting legal custody of their minor children to relatives.[1]  Because we find the trial court did not abuse its discretion, we affirm.

## I.  Procedural History and Relevant Facts

{¶ 2}    Mother and Father have two sons, A.R. and J.R., and a daughter, C.R. On September 10, 2019, the Cuyahoga County Department of Children and Family Services (the "Agency") filed complaints alleging that the couple's three children were abused and dependent and that Father engaged in sexual activity with A.R. and J.R.  The complaint further alleged that Mother lacked judgment to protect the children due to her minimization of the sexual activity, that she had untreated mental issues and cognitive delays, and that Father was physically and verbally aggressive towards her in the presence of their children.  Further, the complaint alleged the children were previously adjudicated dependent.

{¶ 3}    On October 4, 2019, the children were placed in emergency temporary custody. On December 15, 2019, the juvenile court adjudicated the children to be abused and dependent and they were committed to the temporary custody of the Agency.  Both Mother and Father made certain admissions to amended complaints that included admissions that Father was criminally indicted for gross sexual imposition with A.R. and J.R. named as victims; that Mother needs to obtain appropriate judgment to protect the children and obtain services to identify and protect the children from abuse in the home; that Mother needs to

---

[1] On August 22, 2022, we consolidated Mother's and Father's separate appeals for hearing, disposition, and record.

address mental health issues and cognitive delays; that Mother needs to follow through with any treatment recommendations; and that the children had previously been adjudicated dependent and placed under the protective supervision of the Agency.

{¶ 4} The children were initially placed with their maternal grandparents. During the term of temporary custody, the children's placement was changed with J.R. and C.R. being placed with their paternal aunt, D.A., because A.R. had acted inappropriately with his younger sister, C.R. Father's criminal case was resolved after trial with his acquittal. Thereafter, on August 31, 2021, the Agency filed a motion asking the court to modify the temporary custody to legal custody of A.R. to his maternal grandmother, L.J. The Agency filed motions seeking permanent custody of J.R. and C.R. but later amended the motions to a request that legal custody of J.R. and C.R. be given to D.A., their paternal aunt. On November 30, 2021, Father filed a motion for legal custody of the children.

{¶ 5} On June 10, 2022, prior to holding a hearing on the Agency's motions to modify temporary custody to legal custody of the children, the juvenile court determined that both Mother and Father were not seeking joint custody. At the hearing, the juvenile court heard testimony from two Agency caseworkers, Creeshia Murry and Laura Hodakievic, as well as hearing testimony from Father.

{¶ 6} Hodakievic testified that she was an intake worker that specialized in sex abuse allegations and was trained in forensic interviewing of children. She conducted a forensic interview with A.R. on September 4, 2019. Hodakievic detailed

her investigation of the sex abuse allegations and informed the juvenile court of specific disclosures made by A.R. A.R. told her that his father had touched his "pee-pee" both verbally describing what had occurred and demonstrated the activity. He also said that he saw his father touch J.R. in his private area as well. She testified that Mother was dismissive of the allegations, telling her that it was just a game. She further testified that Father told her that he would touch his son's private areas as a joke or a game but that the touching was not sexual in nature. In contrast, during A.R.'s interview with Hodakievic, A.R. said that the activity was not a game. As a result of her investigation, Hodakievic substantiated the allegations of sexual abuse. She explained that a finding of substantiated means there is a credible disclosure from a child and other corroborating information to support the statement.

{¶ 7} After temporary custody was granted, a case plan was developed. As to Mother, the case plan included parenting classes, mental health service, services to address her developmental delays, and domestic violence classes. The parenting classes were made part of Mother's case plan because she minimized the sex abuse allegations. Mother did not sign a release of information for the Agency to verify her participation in mental health or developmental disability services. Mother did however proffer exhibits that Mother completed parenting and domestic violence classes.

{¶ 8} Regarding Father, the case plan included a referral for domestic violence classes and a sex abuse offender program. Father completed the programming. Further, the trial court heard testimony that Father had been

indicted for crimes alleging A.R. and J.R. were sexually abused and that those cases resulted in Father's acquittal. As of the time of trial, Father had no visitation with the children since November 2021 to the time of trial due to the pending criminal charges.

{¶ 9} Both Hodakievic and Murry testified that despite Father's acquittal, the Agency was concerned about the children's safety with their parents due to the substantiated sexual abuse allegations and because Mother continued to minimize the abuse. Further, Murry testified that Mother had not fully cooperated with the Agency's ability to monitor her compliance with the case plan by not signing medical releases. As to visitation, the trial court heard testimony that during the period of temporary custody, Mother visited the children and had both unsupervised and overnight visitation. The visitation was later restricted to weekly supervised visitation after the Agency learned Mother took A.R. to see Father's criminal defense lawyer without the Agency's knowledge. Later, Mother discontinued in-person visitation because she did not like Murry and instead spoke with the children over the phone. Murry also testified that she observed the children in their placements and that the Agency did not have concerns regarding the placements. She testified that A.R. appeared well-bonded with L.J. and that J.R. and C.R. appeared bonded with D.A.

{¶ 10} The guardian ad litem recommended that the L.J. have legal custody of A.R. and that D.A. have legal custody of J.R. and C.R. because granting legal custody would be in the children's best interests.

{¶ 11} Father testified that he admitted that when A.R. was 8 years old, he touched A.R. Father described his actions as a game in which he testified he rubbed A.R.'s penis and would slap A.R.'s penis, but with A.R.'s pants on. Father stated that the game was not done in a sexual manner. He further testified that in his country, such play was normal between boys and their fathers or uncles. Father further testified that he was employed and able to maintain a household and provide for his children.

{¶ 12} On June 15, 2022, the juvenile court granted the Agency's motions to modify temporary custody to legal custody and granted legal custody of A.R. to L.J. and legal custody of J.R. and C.R. to D.A. In doing so, the juvenile court found that L.J. and D.A. had executed statements of understanding for legal custody, that the grants of legal custody would be in the best interests of the children, and that the Agency made reasonable efforts to finalize the permanency plan for the children.

## II. Law and Argument

### A. Assignments of Error

{¶ 13} Mother's assignment of error reads:

The trial court's findings that it was in the best interests of the children to be placed with relatives is against the manifest weight of the evidence.

{¶ 14} Mother argues that the juvenile court abused its discretion in ordering legal custody of her children where the evidence at trial indicated she could provide a secure, permanent placement for her children. She further argues that the juvenile court abused its discretion where the record did not contain specific

allegations of abuse, neglect, or concern that the children would be at risk in her home.

{¶ 15} Father's assignment of error reads:

The trial court abused its discretion when committing the minor children to the legal custody of relatives when it was against the manifest weight of the evidence and contrary to the children's best interests.

{¶ 16} Father argues that custody of the children should have been returned to their parents because both parents complied with and benefited from the case plan put in place by the Agency and he was acquitted of the criminal charges brought against him.

## B. Relevant Law and Standards of Review

{¶ 17} The juvenile court may award legal custody of a child who has been adjudicated abused, neglected, or dependent to any person who filed a motion requesting legal custody of the child. R.C. 2151.353(A)(3). "Legal custody" is a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. R.C. 2151.011(B)(21). A legal custodian must comply with statutory requirements, including signing a statement of understanding for legal custody. R.C. 2151.353(A)(3)(a)-(d).

{¶ 18} Legal custody differs from the termination of parental rights as certain residual rights, privileges, and responsibilities of the parents remain and they are not permanently foreclosed from regaining custody. *In re M.S.*, 8th Dist. Cuyahoga No. 108567, 2019-Ohio-5128, ¶ 32, citing *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 32, and R.C. 2151.353(A)(3)(c).

{¶ 19} Following an adjudication of abuse, neglect, or dependency, a juvenile court awards legal custody "'by examining what would be in the best interest of the child based on a preponderance of the evidence.'" *In re T.R.* at ¶ 44, quoting *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 11, 14. A "preponderance of the evidence" means evidence that is "'more probable, more persuasive, or of greater value.'" *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52. "A custody decision will not be overturned as being against the manifest weight of the evidence if it is supported by competent, credible evidence." *In re Ry.T.*, 8th Dist. Cuyahoga No. 111311, 2023-Ohio-12, ¶ 24, citing *In re D.G.B.*, 8th Dist. Cuyahoga No. 107921, 2019-Ohio-3571, ¶ 25

{¶ 20} When considering the best interest of a child in a legal custody matter, "there is no 'specific test or set of criteria' that must be applied or considered." *In re T.R.* at ¶ 48. This court has however found the factors delineated in R.C. 2151.414(D) to be "instructive." *In re D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 20, citing *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 13. The factors listed in R.C. 2151.414(D) include the interaction of the child with

the child's parents, siblings, relatives, and foster caregivers; the custodial history of the child, including whether the child has been in the temporary custody of a public children services agencies and for how long; and the child's need for a legally secure permanent placement.

{¶ 21} The decision whether to grant a request for legal custody is within the discretion of the juvenile court. *In re M.S.*, 8th Dist. Cuyahoga No. 108567, 2019-Ohio-5128, at ¶ 33. We therefore review a trial court's legal custody determination for an abuse of discretion. "When considering the court's ultimate decision on whether the facts as determined would make it in the child's best interests to be placed in legal custody, we apply the abuse of discretion standard." *In re G.M.* at ¶ 14, citing *In re B.H.*, 8th Dist. Cuyahoga No. 95794, 2011-Ohio-1967, ¶ 10.

{¶ 22} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. Such an abuse "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). A decision is unreasonable if there is "'no sound reasoning process that would support that decision.'" *In re C.D.Y.*, 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4262, ¶ 8, quoting *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. A decision is arbitrary if it is made "'without consideration of or regard for facts [or]

circumstances.'" *In re C.D.Y.* at ¶ 8, quoting *Black's Law Dictionary* 125 (10th Ed.2014).

**C. The Juvenile Court Did Not Abuse Its Discretion by Awarding Legal Custody of the Children to Relatives and Its Judgment Was Not Against the Manifest Weight of the Evidence**

{¶ 23} The Agency sought legal custody of the children with relatives based on its substantiated finding that Father committed sexual abuse and concerns regarding Mother's failure to address her mental health issues as well as Mother's minimization of the allegations of sexual abuse. Both Father and Mother allege that the juvenile court's determination was both an abuse of discretion and against the manifest weight of the evidence because they complied with and benefitted from the Agency's case plan and there was no risk of harm to their children because Father was acquitted of sexual abuse charges.

{¶ 24} Regarding the import of Father's acquittal in his criminal case, we find that fact to be relevant but, while proof beyond a reasonable doubt supports a criminal conviction, only a preponderance of the evidence is required for a court to determine whether to award legal custody. *See In re T.R., supra*, at ¶ 44. Although both Mother and Father cite Father's acquittal to argue that the juvenile court abused its discretion, the juvenile court was not tasked with determining whether the allegations of sexual abuse were proven beyond a reasonable doubt; rather the juvenile court was to make its determination regarding legal custody based upon the best interests of the children by a preponderance of the evidence.

{¶ 25} Further, the juvenile court heard testimony that the sexual abuse of A.R. was substantiated following an Agency investigation and that an allegation of sexual abuse is substantiated if there is a credible disclosure from a child and that disclosure is supported by corroborating information. The finding was based on A.R.'s disclosure as well as corroboration from his father that touching did occur. Moreover, later, the juvenile court heard evidence that A.R. acted inappropriately with his younger sister which action led to separating the children.

{¶ 26} Specifically as to Mother, the trial court received evidence that the children had previously been found to be neglected or abused, that Mother minimized the allegations of sexual abuse, and that although she completed some portions of the case plan, she did not fully cooperate with the Agency. Further, the record did not show that Mother benefitted from the case plan, foregoing in-person visitation with the children because she did not like the Agency worker assigned. As to the children and their placement in temporary custody, the juvenile court heard evidence that the children were in appropriate placements and that their needs were being met.

{¶ 27} After a thorough review of the record, we cannot say the juvenile court's determination to grant legal custody was an abuse of discretion or that the decision was against the manifest weight of the evidence. Accordingly, Mother's and Father's sole assignments of error are overruled.

## III. Conclusion

{¶ 28} In light of the foregoing, we cannot conclude that the trial court abused its discretion by awarding legal custody of the children to relatives or that such would be in the child's best interests.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, A.J., and
EILEEN T. GALLAGHER, J., CONCUR